UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 17-6433 JVS(JCGx) | Date | December 13, 2018 |
| Title | Mark Brulee, et al. v. DAL Global Services, LLC, et al. | | |

Present: The Honorable   JAMES V. SELNA, U.S. District Judge

| Karla Tunis | Not Present |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:** **[IN CHAMBERS] Order GRANTING Motion for Final Approval of Class Action Settlement and Class Representative Service Payments [DKT 39] and Motion for Attorneys' Fees and Costs [DKT 38]**

Plaintiffs Mark Brulee ("Brulee"), Tully Mandizha ("Mandizha"), and Jeffrey Hutton ("Hutton") (collectively, "Class Representatives") moved for final approval of class action settlement and class representative service payments with Defendant DAL Global Services. (Mot., Docket No. 39-1.) Plaintiffs also filed a motion for attorneys' fees and costs. (Mot., Docket No. 38.) DAL Global Services did not oppose either motion.

For the following reasons, the Court **grants** the motion for final approval of class settlement and class representative service payments and **grants** the motion for attorneys' fees and costs .

## I. BACKGROUND

Brulee initiated this action in state court against DAL Global Services alleging that it (1) failed to provide meal periods; (2) failed to authorize and permit rest breaks; (3) failed to pay minimum and straight time wages; (4) failed to pay overtime compensation; (5) failed to indemnify employees for expenditures; (6) failed to timely pay final wages at termination; (7) failed to provide accurate itemized wage statements; and (8) engaged in unfair business practices in violation of the California Business & Professions Code. (Mot., Docket No. 39-1 at 5.) The action was removed to this Court pursuant to the Class Action Fairness Act of 2005 ("CAFA"). (Id.) Brulee filed a First Amended Complaint adding Mandizha as a plaintiff and a cause of action for civil penalties under the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 17-6433 JVS(JCGx) | Date | December 13, 2018 |
| Title | Mark Brulee, et al. v. DAL Global Services, LLC, et al. | | |

California Private Attorney General Act ("PAGA"). (Id.)

Brulee and Mandizha participated in mediation along with Hutton, another employee involved in a separate action against DAL Global Services. (Id.) Mediation took place after parties engaged in extensive discovery which included Class Representatives providing personal records and being deposed by DAL Global Services. (Id. at 6.) DAL Global Services provided pay and time records for a sample of the putative class, and these records were analyzed by Class Representatives' expert to calculate DAL Global Services' potential liability. (Id.)

The parties engaged in a full-day mediation session with mediator Jeffrey Ross, Esq. ("Ross"). (Id. at 7; Marquez Decl., Docket No. 39-2 ¶ 12.) Negotiations continued for several weeks and concluded "only after the parties agreed to the mediator's proposal to resolve this case." (Mot., Docket No. 39-1 at 7.) The settlement resulted in the parties agreeing to the Stipulation of Settlement (the "First Proposed Settlement"). (See First Proposed Settlement, Docket No. 31-3.) As part of the agreement, Brulee filed a Second Amended Complaint ("SAC") adding Jeffrey Hutton as a plaintiff. (Mot., Docket No. 31-1 at 4–5.)

The SAC alleges that DAL Global Services maintained "systematic, company-wide policy and practice[s]" that violated requirements of the California Labor Code, Wage Orders issued by the Industrial Welfare Commission, and the California Business & Professions Code. (SAC, Docket No. 31-3, Exhibit A ¶¶ 4–5.) Specifically, Class Representatives allege that (1) employees work in lieu of taking meal and rest periods resulting in unpaid time because meal periods are automatically deducted from pay; (2) overtime pay is incorrectly calculated due to a failure to account for employees working an overnight shift followed by another shift the same day, employees swapping shifts, and bonuses earned by employees; and (3) DAL Global Services did not reimburse business expenses. (Mot., Docket No. 39-1 at 2–3.) DAL Global Services continues to deny all of the allegations and asserts that it may not be required to comply with California labor laws if they are preempted by the Airline Deregulation Act. (Id. at 3–5.)

### A. Summary of the Settlement

#### 1. The Settlement Class

Pursuant to the Settlement Agreement, the proposed class consists of "all persons

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 17-6433 JVS(JCGx) | Date | December 13, 2018 |
| Title | Mark Brulee, et al. v. DAL Global Services, LLC, et al. | | |

employed by [DAL Global Services] in non-exempt positions in California at any time from August 2, 2013, through the Preliminary Approval Date [of the Settlement]" (the "Class Period"). (Amended Stipulation of Settlement ("Settlement"), Marquez Decl., Docket No. 38-2, Ex.1 ¶ 2.4.) When the parties reached a settlement in principal, the proposed settlement class covered approximately 2,650 employees. (Frank Decl., Docket No. 216-6 at 5.) However, the number of employees covered would be larger if DAL Global Services hired additional employees into positions covered by the proposed settlement class before the Settlement is approved, which it did. (Mot., Docket No. 39-1 at 8.) The potential Class grew to 2,891 persons, a 9.1% increase.[1] (Marquez Decl., Docket No. 39-2 ¶ 21.)

2. Settlement Amount

The Settlement provides that DAL Global Services will pay $2.5 million to resolve this action. (Settlement, Docket No. 39-2, Ex.1 ¶ 5.2.1.) In addition to paying members of the proposed settlement class ("Class Members"), this fund will be used to pay for administrative costs, attorneys' fees, service payments to Class Representatives, and a payment to the California Labor & Workforce Development Agency ("LWDA") for PAGA penalties. (Id.) Should DAL Global Services hire new employees into covered positions before the Proposed Settlement is approved then "[f]or each Class Member over the 3,150 total, [DAL Global Services] will supplement the settlement fund by 20% of the settlement payment that would be paid to a Class Member from the 'Net Settlement Amount,' assuming an equally apportioned distribution among all Class Members and a class size of 3,150." (Id. ¶ 5.2.2.)

3. Service Payments to Class Representatives

Subject to Court approval, Class Representatives will receive a payment of $10,000 each in addition to their settlement payments. (Id. ¶ 5.3.1.) DAL Global Services will not oppose Class Representatives' request up to $10,000. (Id.)

4. Attorneys' Fees

---

[1] The final number of Participating Class Members is 2,888. (Cofinco Suppl. Decl., Docket No. 41 ¶ 13.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 17-6433 JVS(JCGx) | Date | December 13, 2018 |
| Title | Mark Brulee, et al. v. DAL Global Services, LLC, et al. | | |

Attorneys from Moon & Yang, APC, Ares Law Group, P.C., and Leslie Glyer, P.C. (collectively, "Class Counsel") will seek attorneys' fees not to exceed $833,333.33 plus reasonable costs. (Id. ¶ 5.4.1.) "Class Counsel anticipate seeking not more than $25,000 in litigation expenses . . . ." (Mot., Docket No. 31-1 at 8.) DAL Global Services will not oppose an application for attorneys' fees up to $833,333.33. (Settlement, Docket No. 31-3 ¶ 5.4.1.)

      5.      PAGA Penalties

$100,000 will be paid "to the LWDA as its share of the settlement attributable to claims for civil penalties brought under PAGA." (Id. ¶ 5.5.3.)

      6.      Settlement Administrator Costs

The Settlement provides that the Settlement Administrator, CPT Group, Inc. ("CPT") will be paid an amount not to exceed $40,000. (Id. ¶ 5.6.1.)

      7.      Calculation of Settlement Payments

Payments will be made to Class Members once administrative costs, attorneys' fees, service payments to Class Representatives, and PAGA penalties are deducted from the $2.5 million Gross Settlement Amount. (Marquez Decl., Docket No. 39-2 ¶ 18.) Payments will be calculated on a pro rata basis, "based on the ratio of the number of weeks worked by each Class Member during the Class Period, to the total number of weeks worked by all Class Members during the Class Period." (Settlement, Docket No. 39-2, Ex. 1 ¶ 5.7.1(a).) Any payments not cashed after 180 days will be divided pro rata among Class Members who previously cashed their payments. (Id. ¶ 5.7.1(b).) However, if uncashed payments are less than $35,000, roughly $13 per Class Member, then they will be sent to the State of California's Unpaid Wage Fund. (Id.)

      8.      The Notice Plan

The Notice Plan requires direct mail notice to Class Members. (Id. ¶ 6.2.3.) The Settlement Administrator will also establish a settlement website, which will include the settlement agreement and a summary of the terms. (Id.) A notice that is returned with a forwarding address will be mailed out to that address. (Id. ¶ 6.2.5.) If a returned notice

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 17-6433 JVS(JCGx) | Date | December 13, 2018 |
| Title | Mark Brulee, et al. v. DAL Global Services, LLC, et al. | | |

does not include a forwarding address, the Settlement Administrator will perform a skip-trace in an effort to obtain the Class Member's current address. (Id. ¶ 6.2.6.)

        9.      Claims Process

Class Members who do not opt-out will automatically be a part of and bound by any final settlement. (Id. ¶ 6.2.7.) To opt-out a Class Member must submit an Opt-Out Request to the Settlement Administrator. (Id.) This request must be postmarked within sixty days of the notice being sent. (Id.)

    **B.**    **Preliminary Approval**

On July 2, 2018, the Court denied without prejudice Plaintiffs' motion for preliminary approval of class action settlement because the First Proposed Settlement agreement's cy pres provision was deficient and the Court found that Class Members should have sixty days to respond to the notice received. (Order, Docket No. 35-1 at 17.) The Court permitted the parties to submit an ex parte application with a proposed revision indicating that unclaimed funds below $35,000 will be distributed to California's Unclaimed Wage Fund in the name of the class member. (App., Docket No. 36 at 3.) The parties also proposed changing the opt-out and objection period from forty-five to sixty days. (Id.) On July 30, 2018, the Court granted preliminary approval of the Settlement. (Order, Docket No. 37.)

    **C.**    **Notice**

Since receiving preliminary approval, the Court-approved Notice Plan was successfully executed by CPT. (Mot., Docket No. 39-1 at 11; Cofinco Decl., Docket No. 39-6 ¶¶ 3-12.) Direct notice ("Notice Packets") of the Settlement was mailed to 2,891 potential Class Members. (Cofinco Decl., Docket No. 39-6 ¶ 7.) As of November 1, 2018, 27 Notice Packets remain undeliverable. (Id. ¶ 9.)

    **D.**    **Objections/Exclusions**

According to the Court's preliminary approval order, all objections or requests for exclusion needed to be postmarked no later than sixty days after the notice was initially mailed to the Class, which took place on September 12, 2018 (Order, Docket No. 37 ¶

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

Case No. CV 17-6433 JVS(JCGx)     Date   December 13, 2018

Title    Mark Brulee, et al. v. DAL Global Services, LLC, et al.

13; Cofinco Decl., Docket No. 39-6 ¶ 7.) The Class now consists of 2,888 members. (Cofinco Suppl. Decl., Docket No. 41 ¶ 13) As of November 12, 2018, the deadline for submitting disputes, requests for exclusion or objections to the Settlement, no Class Members objected, and only three individuals requested exclusion (Id. ¶¶ 7, 10-13.)

## II. LEGAL STANDARD

### A. Class Certification

Rule 23(a) imposes four prerequisites for a class action: (1) the class is so numerous that a joinder of all members is impracticable (numerosity); (2) there are questions of law or fact common to the class (commonality); (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class (typicality); and (4) the representative parties will fairly and adequately protect the interests of the class (adequacy). Fed. R. Civ. P. 23(a); United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO v. ConocoPhillips Co., 593 F.3d 802, 806 (9th Cir. 2010).

Under Rule 23(b), a plaintiff must show (1) that common factual and legal issues predominate over individual questions and (2) that a class action is the best method to resolve the class claims. Fed. R. Civ. P. 23(b)(3). There are several relevant factors to consider during this analysis: (1) the class members' interest in individually controlling the prosecution or defense of separate actions, (2) the extent and nature of any litigation concerning the controversy already begun by or against class members, (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum, and (4) the likely difficulties in managing a class action. Id. 23(b)(3)(A)-(D).

### B. Approval of Class Settlement

Rule 23(e) requires court approval for class-action settlements. Fed. R. Civ. P. 23(e). A court considers several factors to determine whether a proposed settlement is fair, adequate, and reasonable. These include:

> (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial;

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 17-6433 JVS(JCGx) | Date | December 13, 2018 |
| Title | Mark Brulee, et al. v. DAL Global Services, LLC, et al. | | |

(4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d 935, 941 (9th Cir. 2011) (quoting Churchill Vill., L.L.C. v. Gen. Elec., 361 F.3d 566, 575 (9th Cir. 2004)).

## III. DISCUSSION

### A. Class Certification

The Court preliminarily certified the proposed Class in its prior order. (Order, Docket No. 37.) Nothing has changed in the interim that would warrant a deviation from the Court's prior ruling. Therefore, for the reasons specified in its preliminary approval order, the Court certifies the Settlement Class for final approval of the Settlement.

### B. Approval of the Class Settlement

The Court analyzes the applicable factors under Rule 23(e) and approves the Proposed Settlement.

      1.      Strength of the Plaintiff's Case and the Risk, Expense, Complexity, and Likely Duration of Further Litigation

"An important consideration in judging the reasonableness of a settlement is the strength of the plaintiffs' case on the merits balanced against the amount offered in the settlement." Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc., 221 F.R.D. 523, 526 (C.D. Cal. 2004) (citation omitted). However, "a proposed settlement is not to be judged against a speculative measure of what might have been awarded in a judgment in favor of the class." Id.; see also Officers for Justice v. Civil Serv. Comm'n of the City and Cty. of San Francisco, 688 F.2d 615, 625 (9th Cir.1982) ("Neither the trial court nor [the appellate court] is to reach any ultimate conclusions on the contested issues of fact and law which underlie the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 17-6433 JVS(JCGx) | Date | December 13, 2018 |
| Title | Mark Brulee, et al. v. DAL Global Services, LLC, et al. | | |

merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements."). A second relevant factor "is the risk of continued litigation balanced against the certainty and immediacy of recovery from the Settlement." Vasquez v. Coast Valley Roofing, Inc., 266 F.R.D. 482, 489 (E.D. Cal. 2010).

These factors support final settlement approval. Class Representatives "are confident in the merits of their claims, [but] a legitimate controversy exists as to each cause of action." (Marquez Decl., Docket No. 39-2 ¶ 34.) Additionally, "because the issues here are fairly contested, there is a possibility of the Court not awarding PAGA penalties even if [the Class] prevailed on the merits." (Id. ¶ 35.) Although the parties have engaged in a significant amount of informal discovery and investigation, significant formal, written discovery remains before the action could proceed to class certification and trial. (See Id. ¶ 37.) "As a result, the parties would incur considerably more attorneys' fees and costs . . . ." (Id.) Considering the risk and expense involved in continuing the proceedings, this factor weighs in favor of final approval.

2. Amount Offered in the Proposed Settlement

"It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair." In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 459 (9th Cir. 2000) (quoting Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco, 688 F.2d 615, 628 (9th Cir. 1982)). As a result, district courts should not judge the proposed settlement "against a hypothetical or speculative measure of what might have been achieved by the negotiators." In re Toys R Us-Delaware, Inc.--Fair & Accurate Credit Transactions Act (FACTA) Litig., 295 F.R.D. 438, 453 (C.D. Cal. 2014) (quoting Officers for Justice, 688 F.2d at 625). Instead, courts should consider the settlement in conjunction with "factors such as the risk of losing at trial, the expense of litigating the case, and the expected delay in recovery (often measured in years)." Id.

An expert, using payroll and timekeeping records provided by DAL Global Services, calculated that a realistic total recovery under all claims amounts to $7.6 million, considering the beginning of the Class Period, August 2, 2013, and ending

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 17-6433 JVS(JCGx) | Date | December 13, 2018 |
| Title | Mark Brulee, et al. v. DAL Global Services, LLC, et al. | | |

on the date of mediation, February 5, 2018—a total of 235.43 weeks. (Marquez Decl., Docket No. 31-2 ¶¶ 18–26; Marquez Decl., Docket No. 39-2 ¶ 21-22.) However, when adjusting for the risk of not succeeding should the claims proceed, Class Counsel estimated that the payout is $2.3 million. (Marquez Decl., Docket No. 39-2 ¶ 24.)

Because the Class Period in the Settlement ends on July 30, 2018, the date the Court ultimately granted preliminary approval, the class period covers an additional 25 weeks from the date of mediation—a total of 260.43 weeks, which is a 10.6% increase in the number of weeks since the start of the Class Period until the date of mediation. (Id. ¶ 23.) As anticipated by the parties, DAL Global Services hired additional workers, increasing the original estimate of 2,650 persons in the Classto a final number of 2,888 persons—approximately a 9.1% increase. (Id. ¶ 22; Cofinco Suppl. Decl., Docket No. 41 ¶ 13.) In order to account for the 10.6% increase in the weeks and the 9.1% increase in Class size, Plaintiffs now estimate a realistic maximum recovery of $8.37 million, with a risk-discounted figure of $2.51 million. (Marquez Decl., Docket No. 39-2 ¶ 24.)

Therefore, a $2.5 million settlement is a reasonable result for the proposed settlement class, particularly considering that the Court might not have awarded full PAGA penalties and there is no guarantee that the proposed settlement class would have prevailed at trial. (Id. ¶¶ 32-33.) The settlement will also give each Class Member, on average, a significant recovery of $510.37. (Marquez Decl., Docket No. 38-2 ¶ 18.); see, e.g., Tijero v. Aaron Bros., Inc., 301 F.R.D. 314, 324 (N.D. Cal. 2013) (approving wage and hour class action settlement with total recovery of $800,000 and average recovery between $28 and $45). This factor weighs in favor of final approval.

iii. Extent of Discovery Completed and the Stage of the Proceedings

"A court is more likely to approve a settlement if most of the discovery is completed because it suggests that the parties arrived at a compromise based on a full understanding of the legal and factual issues surrounding the case. The more the discovery [is] completed, the more likely it is that the parties have 'a clear view of the strengths and weaknesses of their cases.'" In re Toys R Us, 295 F.R.D. at

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 17-6433 JVS(JCGx) | Date | December 13, 2018 |
| Title | Mark Brulee, et al. v. DAL Global Services, LLC, et al. | | |

454 (C.D. Cal. 2014) (internal quotations omitted) (quoting Young v. Polo Retail, LLC, 2007 WL 951821, No. C-o2-4546 VRW, at *4 (N.D. Cal. Mar. 28, 2007)). Likewise, mediation suggests that the parties know their relative strengths and weaknesses. See id. at 455.

Here, although some discovery remains, the parties have engaged in extensive discovery that involved Class Representatives providing DAL Global Services with personal documents and DAL Global Services deposing Class Representatives. (Marquez Decl., Docket No. 39-2 ¶ 9.) Additionally, DAL Global Services provided to Class Counsel timekeeping records for 269 Class Members, payroll records for 638 Class Members, corporate policy documents, personnel files, and class member contact information. (Id. ¶¶ 9-10.) The parties also participated in a day-long mediation. (Id. ¶¶ 12-13.) Although the parties did not settle that day, they continued discussions and subsequently reached an agreement after agreeing to the mediator's proposal to resolve the case. (Id. ¶¶ 13-14.) The amount of investigation already conducted and the negotiations further suggest that the settlement is fair, reasonable, and adequate.

                iv.      Experience and Views of Counsel

"Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." In re Pac. Enters. Sec. Litig., 47 F.3d 373, 378 (9th Cir. 1995). Both parties in this action were represented by competent counsel. Defendants retained Morgan, Lewis & Bockius, LLP, while Class Representatives were represented by attorneys experienced in wage and hour class actions. (See Marquez Decl, Docket No. 31-2 ¶¶ 44–48; Moon Decl., Docket No. 31-4 ¶¶ 20–24; D'Abusco Decl., Docket No. 31-5 ¶¶ 2–11; Glyer Decl., Docket No. 31-6 ¶¶ 2–11.) Therefore, this factor also supports final approval.

                v.      Presence of a Governmental Participant

No governmental entity is present in this litigation. Pursuant to CAFA, the U.S. Attorney and the California Attorney General were notified of the Settlement. (Frederick Decl., Docket No. 42 ¶ 2, Ex. A, B.) No government agency has voiced a concern. (Id.) Accordingly, this factor does not apply in this case. See In re

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 17-6433 JVS(JCGx) | Date | December 13, 2018 |
| Title | Mark Brulee, et al. v. DAL Global Services, LLC, et al. | | |

Toys R Us-Delaware, 295 F.R.D. at 455 (factor does not apply in absence of government participant).

      vi.  Reaction of the Class Members to the Settlement

  "It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." Nat'l Rural Telecomms., 221 F.R.D. at 529 (citations omitted); see also Barbosa v. Cargill Meat Sols. Corp., 297 F.R.D. 431, 448 (E.D. Cal. 2013) ("Where a settlement agreement enjoys overwhelming support from the class, this lends weight to a finding that the settlement agreement is fair, adequate, and reasonable.").

  Following the Court's preliminary approval of the Settlement, CPT caused the Court-approved Notice Packets to be mailed to the 2,891 proposed Class Members. (Cofinco Decl., Docket No. 39-6 ¶ 7.) The mailed notice effort was ultimately delivered to all but 27 Class Members. (Id. ¶ 9.) CPT also set up a website for the Settlement, from which Class Members were able to obtain the Settlement Agreement and a summary of the Settlement terms. (Id. ¶ 8.)

  As of November 12, 2018, none of the 2,891 proposed Class Members have objected to the Settlement. (Cofinco Suppl. Decl., Docket No. 41 ¶ 10.) Additionally, only 3 people filed requests for exclusion, which amounts to approximately 0.1% of the Class. (Id. ¶ 12.) The Court finds that the overall reaction by Class Members to the Settlement has been positive. See Churchill, 361 F.3d at 577 (affirming district court's approval of settlement where 500 of 90,000 class members opted out (.56%) and 45 class members objected to the settlement (.05%)). Accordingly, the absence of objections and small number of requests for exclusion weighs in favor of final approval.

  Overall, the weight of the factors supports the Court's conclusion that the Settlement is fair, reasonable, and adequate.

  **C.**  **Notice**

  Rule 23(c)(2)(B) requires that the Court "direct to class members the best

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 17-6433 JVS(JCGx) | Date | December 13, 2018 |
| Title | Mark Brulee, et al. v. DAL Global Services, LLC, et al. | | |

notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Similarly, Rule 23(e)(1) requires that a proposed settlement may only be approved after notice is directed in a reasonable manner to all class members who would be bound by the agreement. Fed. R. Civ. P. 23(e)(1).

In its preliminary approval order, the Court approved the plan for sending notice to potential Class Members. (Order, Docket No. 37.) As stated above, CPT caused notice to be mailed via first class mail to 2,891 proposed Class Members. (Cofinco Decl., Docket No. 39-6 ¶ 7.) The mailed notice effort reached all but 27 Class Members—approximately 99.7%. (Id. ¶¶ 9.) Additionally, a website was created for the Settlement, from which Class Members were able to obtain information about the case and view documents related to the Settlement. (Id. ¶ 8.)

"Notice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." Rodriguez v. West Publ'g Corp., 563 F.3d 948, 962 (9th Cir. 2009) (internal quotation marks and citation omitted). "Settlement notices are supposed to present information about a proposed settlement neutrally, simply, and understandably[.]" Id. "That standard does not require detailed analysis of the statutes or causes of action forming the basis for the plaintiff class's claims, and it does not require an estimate of the potential value of those claims." Lane, 696 F.3d at 826.

The notice approved by the Court and implemented by CPT satisfies this standard. Accordingly, the Court finds that the notice to the Settlement Class was fair, adequate, and reasonable.

**D.    Class Representative Incentive Award**

Courts have the discretion to issue incentive awards to class representatives. Rodriguez v. West Publ'g Corp., 563 F.3d 948, 958-59 (9th Cir. 2009) ("Incentive awards are fairly typical in class action cases."). The awards are "intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

Case No.   CV 17-6433 JVS(JCGx)                                Date   December 13, 2018

Title   Mark Brulee, et al. v. DAL Global Services, LLC, et al.

      Pursuant to the Settlement, Representative Plaintiffs Brulee, Mandizha, and Hutton seek incentive awards of $10,000.  (Mot., Docket No. 39-1 at 18.)  Numerous courts in the Ninth Circuit have approved similar or higher incentive awards where "the class representative has demonstrated a strong commitment to the class."  Garner v. State Farm Mut. Auto. Ins. Co., No. CV 08 1365 CW (EMC), 2010 WL 1687832, at *17 n.8 (N.D. Cal. Apr. 22, 2010) (collecting cases).  Here, the three Class Representatives each expended substantial time and effort conferring with counsel, reviewing pleadings and other documents, responding to written discovery (including providing their personal telephone and bank records), sitting for deposition, conducting class outreach, participating in settlement negotiations, and reviewing the Settlement Agreement [in efforts to] bring substantial relief to the Class  (Brulee Decl., Docket No. 39-3; Mandizha Decl., Docket No. 39-4; Hutton Decl., Docket No. 39-5.)  Additionally, Brulee, Mandizha, and Hutton consistently communicated with counsel about the status of the case. (Brulee Decl., Docket No. 39-3 ¶¶ 7-9; Mandziha Decl., Docket No. 39-4 ¶¶ 8-11; Hutton Decl., Docket No. 39-5 ¶ 8.)  Further, they were deposed and involved in responding to written discovery and gathering responsive documents.  (Brulee Decl., Docket No. 39-3 ¶¶ 10-11; Mandziha Decl., Docket No. 39-4 ¶¶ 12-13; Hutton Decl., Docket No. 39-5 ¶¶ 8-9.)  Brulee estimates that he spent 75 to 80 hours performing his duties as a class representative.  (Brulee Decl., Docket No. 39-3 ¶ 17.)  Mandziha estimates spending 80 to 90 hours on the class representative duties.  (Mandziha Decl., Docket No. 39-4 ¶ 19.)  Hutton estimates having spent approximately 60 to 70 hours on the case against DAL Global Services.  (Hutton Decl., Docket No. 39-5 ¶ 10.)  In addition, each of the Class Representatives "have risked their reputation in the community and with regard to future employment opportunities as a result of stepping forward publicly in a class action."  (Brulee Decl., Docket No. 39-3 ¶¶ 16-17; Mandziha Decl., Docket No. 39-4 ¶¶ 18-21; Hutton Decl., Docket No. 39-5 ¶ 9.)  Based on Brulee's, Mandziha's, and Hutton's time, effort, and dedication to this matter as the Class Representatives, the Court finds that the incentive award is reasonable.  Accordingly, the Court grants Plaintiffs' motion for Class Representative incentive awards for $10,000.

      **E.**    **Attorneys' Fees and Costs**

          1.    Fees

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

Case No.  CV 17-6433 JVS(JCGx)                                Date  December 13, 2018

Title  Mark Brulee, et al. v. DAL Global Services, LLC, et al.

Class Counsel seeks an award of attorneys' fees in the amount of $833,333.33. (Mot., Docket No. 38-1 at 11.) The parties agreed to a "clear sailing" provision, whereby DAL Global Services would not object to Class Counsel's application for fees. (Settlement, Docket No. 38-2 ¶ 5.4.1.)

A court may award reasonable attorneys' fees and costs in certified class actions where they are authorized by law or by the parties' agreement. Fed. R. Civ. P. 23(h). Here, both the California law applicable in this diversity CAFA action and the parties' agreement authorizes the award of attorneys' fees. (Mot., Docket No. 38-1 at 8.) See Cal. Lab. Code §§ 218.5, 1194, 2802(c); Cal. Code of Civ. Proc. § 1021.5. Even when parties have agreed to a fee award, "courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable." In re Bluetooth, 654 F.3d at 941.

A lawyer who recovers "a common fund for the benefit of persons other than himself or his client" is entitled to reasonable attorney fees from the fund as a whole. Boeing Co. v. Van Gemert, 444 U.S. 472, 478 (1980); Staton v. Boeing Co., 327 F.3d 938, 967 (9th Cir. 2003). The Supreme Court has explained the rationale underlying the "common fund doctrine" as follows:

> [P]ersons who obtain the benefit of a lawsuit without contributing to its cost are unjustly enriched at the successful litigant's expense. Jurisdiction over the fund involved in the litigation allows a court to prevent this inequity by assessing attorney's fees against the entire fund, thus spreading fees proportionately among those benefited by the suit.

Van Gemert, 444 U.S. at 478 (citation omitted). Accordingly, "in common fund cases, a variant of the usual rule applies and the winning party pays his or her own attorneys' fees." Staton, 327 F.3d at 967.

In a common fund case, the court has discretion to use either a percentage or

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

Case No.   CV 17-6433 JVS(JCGx)                              Date   December 13, 2018

Title      Mark Brulee, et al. v. DAL Global Services, LLC, et al.

lodestar method to determine attorney fees.[2] Hanlon v. Chrysler Corp., 150 F.3d 1011, 1029 (9th Cir. 1998). The percentage method requires the court simply to determine what percentage of the fund would provide class counsel with a reasonable fee under all the circumstances. Id. The Ninth Circuit "has established 25% of the common fund as a benchmark award for attorney fees." Id. However, "[t]he benchmark percentage should be adjusted, or replaced with a lodestar calculation, when special circumstances indicate that the percentage recovery would be either too small or too large in light of the hours devoted to the case or other relevant factors." Six (6) Mexican Workers v. Ariz. Citrus Growers, 904 F.2d 1301, 1311 (9th Cir. 1990); Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1048 (9th Cir. 2002) ("The 25% benchmark rate, although a starting point for analysis, may be inappropriate in some cases."). Relevant to this case, "California district courts usually award attorneys' fees in the range of 30–40% in wage and hour class actions that result in the recovery of a common fund under $10 million." Miller v. CEVA Logistics USA, Inc., No. 2:13-CV-01321-TLN, 2015 WL 4730176, at *8 (E.D. Cal. Aug. 10, 2015). A "mechanical or formulaic application" of the percentage method is inappropriate "where it yields an unreasonable result." In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig., 109 F.3d 602, 607 (9th Cir. 1997) [hereinafter Petroleum Prods.]; In re Critical Path, Inc., Sec. Litig., No. C 01-00551 WHA, 2002 U.S. Dist. LEXIS 26399, at *24 (N.D. Cal. June 18, 2002). Regardless of which method the court uses, it must "explain[] its determination by written order or in open court." Powers v. Eichen, 229 F.3d 1249, 1256 (9th Cir. 2000).

The Ninth Circuit encourages courts to use the lodestar method as a "cross-check" on the reasonableness of a fee award determined with the percentage method. See Vizcaino, 290 F.3d at 1050; Petroleum Prods., 109 F.3d at 607 ("It is reasonable for the district court to compare the lodestar fee, or sum of lodestar fees, to the 25% benchmark, as one measure of the reasonableness of the attorneys' hours and rates."); Kakani v. Oracle Corp., No. C 06-06493 WHA, 2007 U.S. Dist.

---

[2] "Despite this discretion, use of the percentage method in common fund cases appears to be dominant." In re Omnivision Techs., Inc., 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2007); see also In re Activision Sec. Litig., 723 F. Supp. 1373, 1378-79 (N.D. Cal. 1989) (discussing advantages of percentage method).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 17-6433 JVS(JCGx) | Date | December 13, 2018 |
| Title | Mark Brulee, et al. v. DAL Global Services, LLC, et al. | | |

LEXIS 95496, at *6 (N.D. Cal. Dec. 21, 2007). As such, this Court will consider a lodestar calculation for purposes of comparison and validation.

To calculate the "lodestar," the court must multiply the number of hours the attorneys reasonably spent on the litigation by the reasonable hourly rate in the community for similar work. McElwaine v. U.S. West, Inc., 176 F.3d 1167, 1173 (9th Cir. 1999). The court may raise or lower the lodestar based on several factors:

> (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

Fischel v. Equitable Life Assurance Soc'y, 307 F.3d 997, 1007 n.7 (9th Cir. 2002). The court must be cautious, however, not to adjust the lodestar figure based on any of the foregoing factors that are subsumed in the original lodestar calculation. Morales v. City of San Rafael, 96 F.3d 359, 364 & n.9 (9th Cir. 1996). The Ninth Circuit has noted that multipliers range from 1.0-4.0 and a "bare majority" fall within the range of 1.5-3.0. Vizcaino, 290 F.3d at 1051 n.6; Van Vranken v. Atl. Richfield Co., 901 F. Supp. 294, 298 (N.D. Cal. 1995) ("Multipliers in the 3-4 range are common in lodestar awards for lengthy and complex class action litigation.").

Class counsel provided several options for calculations of its lodestar amount in a supplemental declaration. (Marquez Suppl. Decl., Docket No. 49 ¶¶ 5, 8-9.) The motion for attorneys' fees indicates the lodestar amount is approximately $499,530.50, comprised of 564.7 hours spent at Moon & Yang, APC ($343,685), 157.7 hours spent at Ares Law Group, P.C. ($94,620), and 102.9 hours spent at Leslie Glyer Law, P.C. ($61,225.50), for a total of approximately

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

Case No.  CV 17-6433 JVS(JCGx)     Date  December 13, 2018

Title  Mark Brulee, et al. v. DAL Global Services, LLC, et al.

825.3 hours spend on this litigation. (Mot., Docket No. 38-1 at 7.) As indicated in supplemental documentation submitted on the day of the scheduled hearing, Class counsel at Moon & Yang also spent an additional 15.4 hours on the case since filing the motion, bringing the total number of hours to 840.7. (Marquez Suppl., Docket No. 49 ¶ 4.)

First, the Court examines whether the number of hours Class Counsel expended on the litigation was reasonable. Class Counsel spent a total of approximately 840.7 hours on this litigation over the course of nearly two years, which included interviewing witnesses, reviewing thousands of pages of documents produced by DAL Global Services, preparing for and defending Plaintiffs' depositions, drafting the original and amended complaints, responding to discovery, retaining an expert and preparing a damages analysis, and mediation, among other tasks related to the case. (Marquez Decl., Docket No. 38-2 ¶¶ 3, 21; Glyer Decl., Docket No. 38-4 Ex. 1.) The Court finds that the number of hours spend on the litigation was reasonable.

Second, the Court considers whether Class Counsel's hourly rates are reasonable. The hourly rates for which Plaintiffs seek approval for the Moon & Yang, APC attorneys who worked on this case are between $600 and $650 per hour, the rates for D'Abusco and Sandoval of the Ares Law Group, P.C. are $600 per hour, and the hourly rates for Glyer of Leslie Glyer, P.C. are $595. (Marquez Decl., Docket No. 38-2 ¶ 34; D'abusco Decl., Docket No. 38-2 ¶ 16; Glyer Decl., Docket No. 38-4 ¶ 14.) Class Counsel's declarations show that the attorneys are experienced and successful litigators. (Marquez Decl., Docket No. 38-2 ¶¶ 25-33; D'Abusco Decl., Docket No. 38-3 ¶¶ 3-11; Sandoval Decl., Docket No. 47 ¶¶ 4-15; Glyer Decl., Docket No. 38-4 ¶¶ 4-14.) Other courts have approved the attorneys' current rates for the Moon & Yang, APC attorneys. (Marquez Decl., Docket No. 38-3 ¶¶ 29(c),(d), 33.) The hourly rates requested by D'Abusco of $600 and Glyer of $595 have not previously been approved by any courts,[3] and the record is

---

[3] Both D'Abusco and Glyer indicate that their former hourly rate of $500 was approved last year by Los Angeles and Riverside Superior Courts in other PAGA actions. (D'Abusco Decl., Docket No. 38-3 ¶ 16; Glyer Decl., Docket No. 38-4 ¶ 14.) Most recently, Glyer's $500/hour rate was approved on March 12, 2018. (Glyer Decl., Docket No. 38-4 ¶ 14.) They now ask the Court to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

Case No.   CV 17-6433 JVS(JCGx)                                           Date   December 13, 2018

Title   Mark Brulee, et al. v. DAL Global Services, LLC, et al.

unclear as to what rates courts have approved for Sandoval. The Court assumes without deciding that the hourly rate for these attorneys could be either $500 or $550 and will calculate the lodestar accordingly.

The contingent nature of the case supports the fee award here. Attorneys are entitled to a larger fee award when their compensation is contingent in nature. See Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1048-50 (9th Cir. 2002); see also In re Omnivision Techs., Inc., 559 F. Supp. 2d 1036, 1047 (N.D. Cal. 2008). "It is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for . . . contingency cases." In re Wash. Pub. Power Supply Sys. Sec. Litig., 19 F.3d 1291, 1299 (9th Cir. 1994). This ensures competent representation for plaintiffs who may not otherwise be able to afford it. Id. Here, Class Counsel faced significant risk from contingent fee litigation because they expended significant time and money without guaranteed payment. (Mot., Docket No. 38-1 at 19.)

Applying the hourly rates that Class Counsel is seeking to the number of hours reasonably billed, Class Counsel's lodestar calculation is either $496,255.00 (for Ares and Glyer attorneys at $550/hour) or $483,225 (for Ares and Glyer attorneys at $500/hour).[4] (Marquez Suppl. Decl., Docket No. 49 ¶¶ 8-9.) "After determining the lodestar, the Court divides the total fees sought by the lodestar to arrive at the multiplier." Bellinghausen v. Tractor Supply Co., 306 F.R.D. 245, 265 (N.D. Cal. 2015). "The purpose of this multiplier is to account for the risk Class Counsel assumes when they take on contingent-fee cases." Hopkins v. Stryker Sales Corp., No. 11-CV-02786-LHK, 2013 WL 496358, at *4 (N.D. Cal. Feb. 6, 2013). "If the multiplier falls within an acceptable range, it further supports

---

approve a $600/hour and $595/hour rate respectively based on each attorney's eleven years of litigation experience. (D'Abusco Decl., Docket No. 38-3 ¶ 16; Glyer Decl., Docket No. 38-4 ¶ 14.)

[4] For purposes of the Tentative Order, the Court uses the number arrived at by Class Counsel. However, this number may require adjustment depending on the additional information requested by the Court with regard to an updated affidavit with additional hours spent since filing the motion, as well as information supporting the award of fees for work performed by "CSS."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 17-6433 JVS(JCGx) | Date | December 13, 2018 |
| Title | Mark Brulee, et al. v. DAL Global Services, LLC, et al. | | |

the conclusion that the fees sought are, in fact, reasonable." Bellinghausen, 306 F.R.D. at 265. "Multipliers of 1 to 4 are commonly found to be appropriate in complex class action cases." Hopkins, 2013 WL 496358, at *4; see also Vizcaino, 290 F.3d at 1051 n.6 (finding that, in approximately 83 percent of the cases surveyed by the Court, the multiplier was between 1.0 and 4.0).

According to Class counsel's calculations, if the attorneys at the Ares Law Group, P.C. and Leslie Glyer Law, P.C. billed at an hourly rate of $550, the lodestar would be $496,255.00 with a multiplier of 1.68 ($833,333.33/$496.255.00). (Marquez Suppl. Decl., Docket No. 49 ¶ 8.) Even if the attorneys billed at an hourly rate of $500, Class Counsel's total lodestar would be $483,225.00, which results in a 1.72 multiplier. (Id. ¶ 9.) Under either scenario, in light of the results achieved, the duration of the case, the contingent nature of Class Counsel's fee arraignment, and the skill required to conduct this litigation, the Court believes that a multiplier of either 1.68 or 1.72 would be appropriate. See Vizcaino, 290 F.3d at 1051 n.6.

In sum, the Court **grants** the motion for attorneys' fees for $833,333.33.

2.  Costs

Class Counsel incurred $21,139.22 in case-related costs. (Mot., Docket No. 38-1 at 7.) "Attorneys may recover their reasonable expenses that would typically be billed to paying clients in non-contingency matters." In re Omnivision Techs., 559 F. Supp. 2d at 1048. Class Counsel provide adequate documentation of these expenses in expense ledgers accompanying their declarations. (Mot., Docket No.38-1 at 21-22; Marquez Decl., Docket No. 38-2 ¶ 38; D'Abusco Decl., Docket No. 38-3 ¶ 17; Glyer Decl., Docket No. 38-4, Ex. 2.) Therefore, the Court awards $21,139.22 for reimbursement of reasonable expenses.

### IV. CONCLUSION

For the foregoing reasons, the Court **grants** the motion for final approval of the class settlement and the Class Representative incentive award. The Court **grants** the motion for attorneys' fees for $833,333.33 and **grants** the award for $21,139.22 in case-related costs.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

Case No.  CV 17-6433 JVS(JCGx)  Date  December 13, 2018

Title  Mark Brulee, et al. v. DAL Global Services, LLC, et al.

**IT IS SO ORDERED.**

                                                                    :   0

                                              Initials of Preparer  kjt